IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| MAGNATE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:22-cv-00040 |
| | ) | |
| UNITED STATES ENVIRONMENTAL | ) | By: Elizabeth K. Dillon |
| PROTECTION AGENCY, | ) | United States District Judge |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

Plaintiff Magnate, LLC ("Magnate"), brough this Federal Tort Claims Act ("FTCA") action against the U.S. Environmental Protection Agency ("EPA"), claiming that the government damaged Magnate's property in Shenandoah County during its allegedly negligent cleanup of hazardous substances on the property. (Compl., Dkt. No. 1.)

Pending before the court are the government's motion to dismiss for lack of subject matter jurisdiction (Dkt. No. 8) and motion to strike Magnate's surreply (Dkt. No. 14). After a hearing and full briefing, both motions are ripe for resolution. For the reasons stated below, the court will deny the motion to strike but will grant the motion to dismiss.

I. INTRODUCTION[1]

Broadly, Magnate alleges that the EPA executed "an unwarranted, unauthorized, and fraudulent Comprehensive Environmental Response, Compensation, and Liability Act

---

[1] Although the court accepts as true the well-pleaded, non-conclusory allegations in Magnate's complaint for purposes of the motion to dismiss, it may also "take judicial notice of docket entries, pleadings and papers in other cases" without converting the matter into a motion for summary judgment. *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015); *cf. Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (holding that a court may "properly take judicial notice of its own records").

(CERCLA) response action[,] turning [its] once valuable property into a largely worthless Superfund/Brownfield site." (Compl. ¶ 2 (emphasis omitted).) In the complaint, Magnate insists that the EPA lacked authority to take a response action on the property because there was no release or substantial threat of release of hazardous substances at the time the EPA acted. (*Id.* ¶¶ 5–6.)

Beyond that, Magnate offers few, if any, details about the property in question or about any actions the EPA took to clean up the property. Instead, the bulk of the complaint describes legal proceedings from other related cases in this court pertaining to the property.

In October 2018, the United States, on behalf of the EPA, brought an action in this court against Magnate under CERCLA, seeking an Order in Aid of Access to Magnate's property so that the EPA could conduct a site investigation and take a response action under CERCLA to remove allegedly hazardous substances from the property. (No. 5:18-cv-00127, Dkt. No. 1.) As Magnate describes it, "EPA appeared in this court on February 12, 2019, to gain access to the property with a Stipulation and Order in Aid of Access." (Compl. ¶ 7; *see also* No. 5:18-cv-00127, Dkt. No. 23.) Magnate asserts that "[t]he Stipulation and Order prepared by EPA . . . were flawed at best," in that they "claimed conditions that were nonexistent, had no test results to substantiate them, and Magnate had test results to refute the conditions stated."[2] (Compl. ¶¶ 7–8.) Ultimately, however, all parties agreed to a Stipulation and Order in Aid of Access; that Order was signed by all parties and then signed and entered by the judge assigned to that case on February 12, 2019. (No. 5:18-cv-00127, Dkt. No. 24.) On June 21, 2019, the United States gave

---

[2] Magnate was represented by counsel, and all parties agreed to and signed a Stipulation and Order in Aid of Access, which was then signed and entered by the judge then assigned to that case on February 12, 2019. (No. 5:18-cv-00127, Dkt. No. 24.) On June 21, 2019, the United States gave notice of its completion of work on the property. (No. 5:18-cv-00127, Dkt. No. 25.)

notice of its completion of its work on the property associated with the response action. (No. 5:18-cv-00127, Dkt. No. 25.)

In March 2020, the EPA filed in this court a notice of its intent to perfect a federal Superfund lien. (No. 5:20-mc-00009, Dkt. No. 1.) Magnate moved to dismiss the lien on due process constitutional grounds, but there was no complaint or cause of action to adjudicate or dismiss, as recognized by the court in its November 2, 2020 order denying Magnate's motion (No. 5:20-mc-00009, Dkt. No. 17) and as agreed to by all parties when they stipulated to a termination of the matter (No. 5:20-mc-00009, Dkt. No. 18).

With respect to its tort claim, Magnate first brought an administrative action under the FTCA, claiming that the EPA was negligent, fraudulent, and acting without authority in attempting to clean up its property. (Compl. ¶¶ 1, 4.) The EPA denied the claim—albeit outside the six-month limitation period to do so. (*Id.*) Magnate also alleges that the EPA "failed to appoint a lawyer to review [its] claim and failed to consider [the] case at all."[3] (*Id.* ¶ 1.) On July 8, 2022—within six months of the EPA's denial of that administrative claim—Magnate filed this action.

Magnate asserts that its damages due to the EPA's response action "are ongoing in the form of a claimed $1,200,000 EPA lien, and fraudulent postings on the property, in violation of

---

[3] A plaintiff cannot sue under the FTCA before it exhausts administrative remedies; to do so, it must "present[] the claim to the appropriate Federal agency" and the agency must deny it in writing. 28 U.S.C. § 2675(a). If the agency does not make a final written disposition on the claim within six months of its filing, the claim is deemed denied, at which point the plaintiff is deemed to have exhausted and can bring the FTCA case to federal court. *See id.* The EPA does not dispute that Magnate has exhausted administrative remedies. Of further note, "[m]eeting that prerequisite . . . merely allows a plaintiff to bring a suit that the FTCA otherwise permits." *Lewis v. United States*, No. DKC 22-2566, 2023 WL 3304890, at *3 (D. Md. May 8, 2023). In other words, the EPA's delay in responding to Magnate's administrative claim does not create an additional cause of action under the FTCA. Accordingly, the court construes Magnate's FTCA claim as seeking relief solely for the damage allegedly caused to its property.

3

both Virginia Code § 18.2-340.37 and 18 U.S. Code § 1001[4], causing prospective purchasers and/or tenants to refuse to have anything to do with the property." (Compl. ¶ 3.) As relief, Magnate seeks $6.2 million in damages, as well as "the removal of the $1,2000,000 lien, and permission to remove all fraudulent postings on Magnate's property."[5] (Compl. at 5.)

The EPA now moves to dismiss the complaint for lack of subject matter jurisdiction (Dkt. No. 8), arguing that the discretionary-function exception to the FTCA's waiver of sovereign immunity applies here and bars this suit entirely.

## II. LEGAL STANDARDS

**A. Subject Matter Jurisdiction**

Federal courts have limited subject matter jurisdiction and are empowered to act only in the specific instances authorized by Congress. *Bowman v. White*, 388 F.2d 756, 760 (4th Cir. 1968). A motion to dismiss under Rule 12(b)(1) tests the court's subject matter jurisdiction over a plaintiff's claim. The court must determine questions of subject matter jurisdiction before it can address the merits of a case. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95 (1998).

---

[4] Virginia Code § 18.2-340.37 is a criminal statute that prohibits any person from "convert[ing] funds derived from any charitable gaming to his own or another's use"—which bears seemingly no relevance to the facts of this case. 18 U.S.C. § 1001—also a criminal statute—makes it illegal for anyone "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States" to "knowingly and willfully . . . make[] any materially false, fictitious, or fraudulent statement or representation; or make[] or use[] any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry." 18 U.S.C. § 1001(a)(2), (a)(3). Magnate never alleges who committed either of these offenses, nor does it explain whether—and if so, how—such a violation of either of these two non-remedial statutes would give rise to damages that would be recoverable in a Federal Tort Claims Act case.

[5] It is worth noting, however, that even if the court had subject matter jurisdiction over this FTCA case with respect to *money damages*, it would nevertheless lack jurisdiction to order the removal of the lien or permit removal of any postings on the property. "The provisions of the [FTCA], which plaintiff cites as the jurisdictional basis for this suit, are quite clear in that the only remedy available under the [FTCA] is for money damages, and [the FTCA] does not submit the United States to injunctive relief." *Wham v. United States*, 458 F. Supp. 147, 150 (D.S.C. 1978); 28 U.S.C. § 2672.

A defendant may challenge federal subject matter jurisdiction in two ways. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). First, a defendant may attack the face of the complaint and contend "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). In evaluating a facial challenge to subject-matter jurisdiction, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id*. Second, a defendant may attack subject-matter jurisdiction as a matter of fact and argue "that the jurisdictional allegations of the complaint [are] not true." *Id*. Under those circumstances, a plaintiff receives less procedural protection, and "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

In its briefing, the government does not specify whether its motion asserts a facial or factual challenge to the court's subject matter jurisdiction, but it did submit a declaration from Myles Bartos (an EPA employee), the consideration of which would effectively require the court to treat the motion as a factual challenge. However, at the hearing on the motion to dismiss, counsel for the government clarified that the Bartos declaration merely provides further context about the EPA's cleanup processes in the event the court needed additional information. Because neither the declaration nor the government's briefing necessarily challenges the truth of Magnate's *well-pleaded, non-conclusory* allegations, the court construes the motion to dismiss as

asserting a facial challenge to subject matter jurisdiction and will not consider the Bartos declaration.[6]

Nevertheless, the plaintiff bears the burden of proving that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).  If the plaintiff cannot do so, then the court must dismiss the complaint.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

**B. Federal Tort Claims Act; Discretionary-Function Exception to the FTCA's Waiver of Sovereign Immunity**

Federal courts do not have jurisdiction over actions against the United States unless Congress has expressly waived the federal government's sovereign immunity.  *United States v. Sherwood*, 312 U.S. 584, 586–87 (1941).  A waiver of sovereign immunity "will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

Here, Magnate asserts a cause of action under the Federal Tort Claims Act.  The FTCA constitutes an express waiver of sovereign immunity and provides limited circumstances in which the United States may be held liable for the negligence of its employees.  28 U.S.C. § 1346(b)(1); *see McGhee v. United States*, No. 7:13–cv–00123, 2014 WL 896748, at *2 (W.D. Va. Mar. 6, 2014).  However, this waiver does not apply to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).  The plaintiff bears the burden of proving that the discretionary-

---

[6] Additionally, although Magnate's complaint includes citations to an exhibit A, B, C, D, and E, no exhibits were ultimately attached to the filing; as such, the court did not consider any such exhibits in reaching its decision.

function exception does not apply to the function or duty at issue. *Indem. Ins. Co. of N. Am. v. United States*, 569 F.3d 175, 180 (4th Cir. 2009). If the exception does apply, a court must dismiss the claim for lack of subject-matter jurisdiction. *Id*.

To determine if the discretionary-function exception applies, the court must perform a two-step analysis. *Clendening v. United States*, 19 F.4th 421, 432 (4th Cir. 2021). First, the court must decide whether the challenged conduct "involves an element of judgment or choice." *Suter v. United States*, 441 F.3d 306, 310 (4th Cir. 2006) (citation omitted). Conduct does not involve an element of judgment or choice if a federal statute, regulation, or policy specifically prescribes it. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). Second, the court must determine whether the conduct is "based on considerations of public policy." *Suter*, 441 F.3d at 311 (quoting *Berkovitz*, 486 U.S at 537). To make this determination, the court is to "look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." *Baum v. United States*, 986 F.2d 716, 720–21 (4th Cir. 1993). It is immaterial whether the various policy considerations were actually balanced or considered; the relevant question is whether the conduct is "susceptible to policy analysis." *See Suter*, 441 F.3d at 325. The plaintiff bears the burden of proving that the government's conduct is not grounded in considerations of public policy. *Indem. Ins. Co. of N. Am.*, 569 F.3d at 181.

### III. DISCUSSION

**A. Motion to Strike**

Before the court considers the parties' arguments, it must determine which of the arguments are appropriately before the court. Under the local rules of this district, after the filing of an opening brief, responsive brief and reply brief, "[n]o further briefs (including letter briefs)

7

are to be submitted without first obtaining leave of court." *See* W.D. Va. Civ. R. 11(c)(1). Nevertheless, without seeking leave of court, Magnate filed a surreply to the EPA's reply brief in support of the motion to dismiss. (Dkt. No. 13.) The EPA moved to strike the surreply (Dkt. No. 14). However, for the reasons stated on the record at the hearing—and because Magnate could just as easily have presented the arguments contained in the surreply at oral argument—the court will deny the motion to strike.[7]

**B. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

The only description Magnate provides in its complaint of the EPA's allegedly tortious conduct in this case is that it amounted to "an unwarranted, unauthorized, and fraudulent Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) response action" which "turn[ed] Magnate's once valuable property into a largely worthless Superfund/Brownfield site" (Compl. ¶ 2) and that there was no release or substantial threat of a release of a hazardous substance on the property at the time of the action (*id.* ¶ 5). Reduced to the non-conclusory statements, Magnate's sole substantive factual allegation is that the EPA took a response action under CERCLA that caused damage to its property.

The United States maintains that the EPA's performance of a response action is protected under the discretionary-function exception because such response actions are undertaken pursuant to the EPA's broad discretionary authority under CERCLA to clean up facilities containing hazardous substances. The court agrees.

CERCLA authorizes the EPA to perform "removal" actions, *see* 42 U.S.C. § 9601(23), and "remedial" actions, *see id*. § 9601(24). When there is a release (or substantial threat of

---

[7] But regardless of consideration of the surreply, the court's decision on the motion to dismiss would be the same.

release) of a hazardous substance into the environment, the EPA—pursuant to the President's delegation—"*is authorized* to act, consistent with the [National Oil and Hazardous Substances Pollution Contingency Plan (NCP), 40 C.F.R. Part 300], to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance . . . or take any other response measure consistent with the national contingency plan which the President *deems necessary* to protect the public health or welfare or the environment." 42 U.S.C. § 9604(a)(1) (emphasis added).

EPA regulations provide further insight into the discretionary and policy-oriented process the agency employs. First, in determining what should be included in the removal preliminary assessment,[8] the EPA may consider (but is not limited to considering) the following:

> (i) Identification of the source and nature of the release or threat of release;
>
> (ii) Evaluation by [the Agency for Toxic Substances and Disease Registry] or by other sources, for example, state public health agencies, of the threat to public health;
>
> (iii) Evaluation of the magnitude of the threat;
>
> (iv) Evaluation of factors necessary to make the determination of whether a removal is necessary; and
>
> (v) Determination of whether a nonfederal party is undertaking proper response.

40 C.F.R. § 300.410(c)(1). Then, in determining whether a removal action is appropriate or necessary, the agency must balance a variety of enumerated factors, including

> (i) Actual or potential exposure to nearby human populations, animals, or the food chain from hazardous substances or pollutants or contaminants;

---

[8] Under CERCLA, a removal preliminary assessment means "review of existing information and an off-site reconnaissance, if appropriate, to determine if a release may require additional investigation or action." 40 C.F.R. § 300.5. A removal site evaluation of a release identified for possible CERCLA response includes a removal preliminary assessment. *Id.* § 400.410(a), (b).

9

> (ii) Actual or potential contamination of drinking water supplies or sensitive ecosystems;
>
> (iii) Hazardous substances or pollutants or contaminants in drums, barrels, tanks, or other bulk storage containers, that may pose a threat of release;
>
> (iv) High levels of hazardous substances or pollutants or contaminants in soils largely at or near the surface, that may migrate;
>
> (v) Weather conditions that may cause hazardous substances or pollutants or contaminants to migrate or be released;
>
> (vi) Threat of fire or explosion;
>
> (vii) The availability of other appropriate federal or state response mechanisms to respond to the release; and
>
> (viii) Other situations or factors that may pose threats to public health or welfare of the United States or the environment.

*Id.* § 300.415(b)(2). After consideration of those factors and the information gleaned from the removal site evaluation, if the EPA determines that a removal response action is appropriate, it will select a removal action with the aim to "abate, prevent, minimize, stabilize, mitigate, or eliminate the threat to public health or welfare of the United States or the environment." 40 C.F.R. § 300.415(b)(3).

Although the complaint does not specify exactly how the EPA executed the response action on its property (let alone how it caused damage in doing so), Magnate evidently agrees that the allegedly tortious conduct was undertaken pursuant to a removal response action. (*See* Compl. ¶ 2.) And it remains true that no statute, regulation, or policy mandates that the EPA undertake a particular course of action in carrying out such response actions. *See* 42 U.S.C. § 9621 ("The President shall select appropriate remedial actions determined to be necessary."). Rather, deciding how to best use limited government resources to clean up a property with

10

hazardous substances "touche[s] on policy choices, not the least of which involve[s] the translation of CERCLA's general health and safety provisions into concrete plans." *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1541 (10th Cir. 1992). "This type of translation involves the very essence of social, economic, and political decision[-]making—the precise policy choices protected by the discretionary function exception." *Id.* (internal quotations and alterations omitted). Thus, it is unsurprising that courts have consistently applied the discretionary-function exception to bar FTCA claims brought by plaintiffs complaining of personal injuries and/or property damage flowing from the government's response activities. *See, e.g.*, *U.S. Fidelity & Guar. Co. v. United States*, 837 F.2d 116, 122–23 (3d Cir. 1988); *Daigle*, 972 F.2d at 1541–43; *United States v. Amtreco, Inc.*, 790 F. Supp. 1576, 1581 (M.D. Ga. 1992); *United States v. JG-24, Inc.*, 309 F. Supp. 2d 230, 233–34 (D.P.R. 2004); *United States v. Green*, 33 F. Supp. 2d 203, 221–23 (W.D.N.Y. 1998); *United States v. Skipper*, 781 F. Supp. 1106, 1114–15 (E.D.N.C. 1991); *see also, e.g.*, *Employers Ins. of Wausau v. United States*, 27 F.3d 245, 248 (7th Cir. 1994) (discretionary-function exception barred FTCA suit alleging that the EPA wrongfully issued administrative orders under CERCLA directing the plaintiff to perform a cleanup).

On the other hand, the crux of Magnate's FTCA theory is that the discretionary-function exception does not apply because CERCLA simply did not authorize the EPA's conduct here *at all*, effectively rendering non-discretionary any conduct taken by the EPA pursuant to the response action. Magnate argues that, because the complaint alleges that no release or substantial threat of release of hazardous substances was ever present on its property, the EPA never had the authority under CERCLA to execute—and, therefore, did not have discretion when it executed—the response action based on the facts alleged. (Compl. ¶¶ 5–6.)

It is true that conduct falling clearly outside the legal authority delegated to a federal agency or employee is, by its nature, non-discretionary and will not allow the United States to claim immunity under the discretionary-function exception. *See, e.g.*, *Hatahley v. United States*, 351 U.S. 173 (1956) (discretionary-function exception did not apply to actions of Federal range agents who appropriated, sold, or destroyed the plaintiffs' horses that were grazing on federal land, where agents failed to comply with prior written notice requirement imposed by Federal Range Code). Under that principle, the court acknowledges that, if the EPA's response authority was not triggered under CERCLA and it acted anyway, then the EPA likely would not enjoy the discretion ordinarily afforded by that authority.

But in this case, Magnate's argument to that end is unavailing for two distinct reasons. First, the allegations in Magnate's complaint are entirely insufficient for this court to draw a reasonable inference that the EPA's allegedly tortious actions were not taken pursuant to, and within the scope of, its discretionary authority under CERCLA. Indeed, the complaint hardly alleges any particular action or actions that government employees took that caused damage on Magnate's property. As the Supreme Court has long recognized, there is a presumption that the EPA's actions, like those of other federal agencies and public officials, are regular, in accordance with the law, and otherwise valid.[9] The blanket assertions in the complaint that there was no release or substantial threat of release of a hazardous substance on Magnate's property and that the EPA's response action was unauthorized—without specific allegations to undergird those claims—hardly rebut that principle; rather, they are mere labels and legal conclusions not

---

[9] *See, e.g.*, *Bracy v. Gramley*, 520 U.S. 899, 909 (1997) ("Ordinarily, we presume that public officials have properly discharged their official duties.") (internal quotations omitted); *FCC v. Schreiber*, 381 U.S. 279, 296 (1926) (recognizing that administrative agencies are entitled to the presumption "that they will act properly and according to law"); *United States v. Royer*, 268 U.S. 394, 398 (1925) ("[A]ll necessary prerequisites to the validity of official acts are presumed to exist, in the absence of evidence to the contrary.").

entitled to the presumption of truth at the pleading stage. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Second, and more importantly, even if Magnate could plausibly allege that there was no release or substantial threat of release of a hazardous substance on its property, this court already resolved the question of whether the EPA had legal authority to take a response action at this property well over four years ago. In its February 12, 2019 Order in Aid of Access—to which both Magnate and the United States stipulated—the court explicitly recognized that the "EPA, including its officers, employees, contractors, and representatives, is authorized to enter [Magnate's property], under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e), for the purpose of taking the response action that EPA selected on May 31, 2018, determining the need for any additional response actions, and taking such additional or different response actions as EPA may select via a modification or amendment to the response action selected on May 31, 2018." (5:18-cv-00127, Dkt. No. 24 at 2; *see also id.* 5 (signature of Darryl Bates, Managing Member of Magnate, LLC).) And the EPA would undoubtedly have relied upon that Order in determining that it could indeed enter Magnate's property and execute the response action. Magnate cannot now retract its stipulation and argue that the EPA lacked CERCLA authority in an effort to prop up its tort claim.[10] Magnate has repeatedly argued (in this case and in the related actions) that the Order in Aid of Access and the EPA's Superfund lien were imposed without due process. But legal challenges to the Order in Aid of Access are likely moot,[11] and legal challenges to the

---

[10] Magnate argues that, because the EPA "had no authority granted by CERCLA to take a response action," "the Stipulation and Order in Aid to Access had no applicability." (Compl. ¶ 6.) But the Order itself recognized (and Magnate stipulated) that the EPA indeed did have that authority. (Dkt. No. 24 at ¶¶ 1–2.)

[11] The Order in Aid of Access only remained in effect until the government notified the court that the EPA had completed the response action (No. 5:18-cv-00127, Dkt. No. 24 at 4), which it did on June 21, 2019 (No. 5:18-cv-00127, Dkt. No. 25). Because the order expired by its own terms, motions to vacate or otherwise challenge its provisions would be moot. *See, e.g.*, *Trump v. Hawaii*, --- U.S. ----, 138 S. Ct. 377, 377 (2017) (Mem) (recognizing

lien (and the Order in Aid of Access, for that matter) are not cognizable here as tort claims against the federal government. *See FDIC v. Meyer*, 510 U.S. 471, 477 (1994) (recognizing that the FTCA does not provide a cause of action for a constitutional tort claim).

In sum, the court finds that Magnate's negligence claim is based upon a discretionary function of the EPA; thus, the government has not waived its sovereign immunity under the FTCA, and Magnate's complaint must be dismissed for lack of subject matter jurisdiction.

IV. CONCLUSION

For the foregoing reasons, the court will issue an appropriate order denying the government's motion to strike Magnate's surreply (Dkt. No. 14) and granting the government's motion to dismiss for lack of subject matter jurisdiction (Dkt. No. 8). Magnate's claim will be dismissed with prejudice.[12]

Entered: June 26, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

that, because the contested orders suspending entry of aliens and refugees had "expired by their own terms[,] the appeal no longer present[ed] a live case or controversy" (alteration and internal quotation marks omitted)).

[12] Typically, dismissal for lack of subject matter jurisdiction is without prejudice. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. Openband at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013). However, because Magnate cannot plead around the absence of a waiver of sovereign immunity, the court will dismiss this action with prejudice. *See, e.g.*, *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988) (affirming dismissal with prejudice because "the bar of sovereign immunity is absolute; no other court has the power to hear the case, nor can the [plaintiff] redraft their claims to avoid the exceptions to the FTCA"); *Amisi v. Riverside Reg'l Jail Auth.*, 469 F. Supp. 3d 545, 555 n.2 (E.D. Va. 2020) (dismissing with prejudice because "no set of facts could overcome . . . sovereign immunity"); *Smith v. Va. Dep't of Agric. & Consumer Servs.*, Civil Action No. 3:12cv77, 2012 WL 2401749, at *10 (E.D. Va. June 25, 2012) ("To the extent sovereign [applies], such claims will be dismissed with prejudice. Dismissal with prejudice and without leave to amend is proper because such deficiency would be incurable through amendment."); *Martens v. Sjostrom*, Civil No. 13-2297 (JRT/JSM), 2014 WL 1356139, at *6 (D. Minn. Apr. 7, 2014) (dismissing with prejudice based on sovereign immunity because "there is no court of competent jurisdiction in which this complaint can be filed").